## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN STRUGALA, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | **CIVIL ACTION NO. 08-cv-1070** |
| vs. ) | |
| ) | CLASS ACTION COMPLAINT |
| SUNOPTA INC.,  STEVEN R. BROMLEY, JOHN H. DIETRICH and STEPHEN R. BRONFMAN, ) ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

Plaintiff, Stephen Strugala ("Plaintiff"), alleges the following based upon the investigation by Plaintiff's counsel, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SunOpta Inc. ("SunOpta" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION AND OVERVIEW

1.    This is a federal class action on behalf of purchasers of SunOpta's securities between August 8, 2007 and January 25, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    SunOpta is an operator of high-growth businesses, focusing on integrated business

models in the natural and organic food, supplements and health and beauty markets. The Company has three business units: (1) the SunOpta Food Group, which specializes in sourcing, processing and distribution of natural and organic food products integrated from seed through packaged products; (2) the Opta Minerals Inc. (TSX:OPM) (66.3% owned by SunOpta), a producer, distributor, and recycler of industrial materials; and (3) the SunOpta BioProcess Inc. which engineers and markets proprietary steam explosion technology systems for the pulp, bio-fuel and food processing industries.

3.     On January 24, 2008, after the market closed, the Company shocked investors when it reported its anticipated financial results for 2007, disclosing for the first time that it expected to incur write-downs and provisions in the range of $12 million to $14 million. Moreover, the Company stated that it would likely restate financial results from previous quarters.  The Company attributed the write-downs to inventory within the SunOpta Fruit Group's berry operations, as well as difficulties in collecting for services and equipment provided to a customer of the SunOpta BioProcess Group.  Finally, the Company stated that it was not able to give revenue and earnings guidance for 2008.

4.     Upon the release of this news by the Company, the Company's shares declined $3.51 per share, or 36.72 percent, to close on January 25, 2008 at $6.05 per share, on unusually heavy trading volume.

5.     The Complaint alleges that, throughout the Class Period, defendants failed to disclose material adverse facts about the Company's financial well-being, business relationships, and prospects.  Specifically, defendants failed to disclose or indicate the following: (1) that defendants artificially inflated the Company's financial results and failed to properly account for results of operations, which resulted in an overstatement of the Company's profitability; (2) that

the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (3) that the Company lacked adequate internal and financial controls; (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

6.    As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class Members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

7.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

9.    Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). SunOpta is a Canadian corporation. Pursuant to 28 U.S.C. §1391(d), as an alien corporation, SunOpta may properly be sued in any District in the United States, including the Southern District of New York. Moreover, SunOpta trades common stock on the NASDAQ, which is located in the Southern District of New York. Thus, venue is proper in this District.

10.    In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

11.    Plaintiff, Stephen Strugala, as set forth in the accompanying certification, incorporated by reference herein, purchased SunOpta's securities at artificially inflated prices during the Class Period and has been damaged thereby.

12.    Defendant SunOpta is a Canadian corporation with its principal executive offices located at 2838 Bovaird Drive West, Brampton, Ontario, Canada.

13.    Defendant Steven R. Bromley ("Bromley") was, at all relevant times, the Company's President, Chief Executive Officer ("CEO"), Chief Operating Officer ("COO") and a member of the Board of Directors.

14.    Defendant John H. Dietrich ("Dietrich") was, at all relevant times, the Company's Vice President and Chief Financial Officer ("CFO").

15.    Defendant Stephen R. Bronfman ("Bronfman") was, at all relevant times, a member of the Company's Board of Directors.

16.    Defendants Bromley, Dietrich and Bronfman are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of SunOpta's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public

information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

17.    SunOpta is an operator of high-growth businesses, focusing on integrated business models in the natural and organic food, supplements and health and beauty markets. The Company has three business units: (1) the SunOpta Food Group, which specializes in sourcing, processing and distribution of natural and organic food products integrated from seed through packaged products; (2) the Opta Minerals Inc. (TSX:OPM) (66.3% owned by SunOpta), a producer, distributor, and recycler of industrial materials; and (3) the SunOpta BioProcess Inc. which engineers and markets proprietary steam explosion technology systems for the pulp, bio-fuel and food processing industries.

### Materially False and Misleading
### Statements Issued During the Class Period

18.    The Class Period begins on August 8, 2007. On this day, the Company issued a press release entitled "SunOpta Announces Record Second Quarter Results; Revenues Increase 33.5% and Net Earnings Increase 55.4%." Therein, the Company, in relevant part, stated:

> SunOpta Inc. (SunOpta or the Company) (Nasdaq:STKL) (TSX:SOY) today announced record results for the second quarter ended June 30, 2007. All amounts are expressed in U.S. dollars.

*The Company achieved record revenues for the three months ended June 30, 2007, realizing its 39th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 33.5% to $207,977,000 as compared to $155,745,000 in the second quarter of 2007, led by a 37.9% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 16.2% on a consolidated basis and includes internal growth of 19.4% within the SunOpta Food Group.*

Operating income for the quarter increased to $11,402,000 as compared to $8,772,000 in 2006, driven by increases in segment operating income in all groups within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings in the quarter were $6,750,000 or $0.11 per diluted common share as compared to $4,343,000 or $0.08 per diluted common share in the prior year.

*For the six months ended June 30, 2007 the company has recognized record revenues of $391,417,000 versus $289,057,000 in the same period of the prior year, an increase of 35.4%. Net earnings for the period increased 44.1% to $10,600,000 or $0.17 per diluted common share as compared to $7,355,000 or $0.13 per diluted common share for the same period in 2006.*

*In the quarter, the SunOpta Food Group reported increased revenues of $189,264,000 as compared to $137,287,000 in the second quarter of 2006, a 37.9% increase. Segment operating income increased to $11,411,000 versus $8,168,000 in 2006, an increase of 39.7%. This increase is after additional corporate cost allocations of $1,326,000. Excluding these allocations, segment operating income increased 55.9%.* The improved segment operating income was driven by the continued rebound in sales and margins within sunflower product operations, strong volumes and margins in organic grains, packaged soy milk products and food ingredients, strong demand for organic frozen fruit products and improved margins within the SunOpta Distribution Group. During the second quarter the Company's fruit bar operations continued to implement improvements designed to address ongoing operational issues which have impacted results in the first half of the year. The Company expects significant revenue and margin improvements in these operations as major capacity and equipment upgrades are completed late in the third quarter.

*Opta Minerals revenue increased to $18,394,000, due primarily to the acquisition of Bimac Corporation late in 2006, offset by cyclical weakness in the foundry and steel industries. Segment operating income for the quarter declined by 14.0% to $2,061,000 from $2,396,000, due primarily to product mix and reduced sales of higher margin desulphurization products.* The Group continues to pursue strategic transactions and new product development to complement its existing product portfolio.

*During the quarter the Company completed a $30 million dollar financing within SunOpta BioProcess Inc.(SBI) at a post money valuation of $230 million. The funds from this financing will be used to further leverage its technology and invest directly in the production of cellulosic ethanol.* SBI is working toward completion of current proprietary pre-treatment and fiber preparation equipment projects and is pursuing a number of exciting cellulosic ethanol projects in both North America and around the world.

*The Company remains well positioned for future growth with working capital of $155,316,000 and total assets of $525,424,000. Capital additions in the quarter were $6,985,000 as compared to $2,069,000 for the same period in the prior year. The long term debt to equity ratio at June 30, 2007 was 0.31:1:00, providing the Company financial resources to invest in internal growth, capital projects and execute on its acquisition program. Book equity per outstanding common share has grown to $3.94 from $3.72 at March 31, 2007.*

Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are very pleased with our second quarter results, driven by solid internal growth of over 19% within our vertically integrated food operations. These earnings are consistent with our expectations for the second quarter and reflect our continued dedication to the growth of our business, both top line and bottom line. *Based on these results, we are pleased to increase our annual revenue guidance to $775 to $800 million and confirm our net earnings guidance of $0.35 to $0.40 per share, including the dilutive impact of the additional shares issued during the first quarter."* [Emphasis added. Internal references omitted.]

19.     On August 10, 2007, SunOpta filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Bromley and Dietrich and reaffirmed the Company's financial results previously announced on August 8, 2007. Additionally, the

Company, in relevant part, stated:

**Basis of presentation**

The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States. Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the six months ended June 30, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements, and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

The interim condensed consolidated financial statements include the accounts of the Company and its subsidiaries, and have been prepared on a basis consistent with the financial statements for the year ended December 31, 2006. All significant intercompany accounts and transactions have been eliminated on consolidation.

*        *        *

**Item 4.    Controls and Procedures**

Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of June 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective. Disclosure controls and procedures are designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures are also designed to ensure that information is accumulated and communicated to management, including the Chief Executive Officer and Chief

Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

**Internal Control over Financial Reporting**

There has been no change in the Company's internal control over financial reporting that occurred during the Company's quarter ended June 30, 2007 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.

20.    The Company's 10-Q filed on August 10, 2007 also contained certifications signed by Defendants Bromley and Dietrich, who stated:

I, [Steve Bromley/John Dietrich] of SunOpta Corporation, certify that:

(1) I have reviewed this quarterly report on Form 10-Q of SunOpta Inc. for the quarter ended June 30, 2006,

(2) Based on my knowledge, this quarterly report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this quarterly report;

(3) Based on my knowledge, the financial statements, and other financial information included in this quarterly report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this quarterly report;

(4) The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a -15(f) and 15d -15(f) for the registrant and we have:

a. Designed such disclosure controls and procedures or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this quarterly report is being prepared;

b. Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this quarterly report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this quarterly report based on such evaluation; and

d. Disclosed in this quarterly report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

(5) The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors:

a. All significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

*       *       *

In connection with the quarterly report of SunOpta Inc. (the "Company"), on Form 10-Q for the period ended June 30, 2007 (the "Report"), I, Steve Bromley, President and Chief Executive Officer of the Company and I, John Dietrich, Vice President and Chief Financial Officer of the Company, each certify pursuant to 18 U.S.C. Section 1350, that to our knowledge:

1. the Report fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

2. the information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company.

21.    On November 6, 2007, the Company issued a press release entitled "SunOpta Announces Record Third Quarter Results." Therein, the Company, in relevant part, stated:

**Revenues Increase 41.4 Percent, Net Earnings Increase 234.4 Percent**

SunOpta Inc. (SunOpta or the Company) (Nasdaq:STKL) (TSX:SOY) today announced ***record results for the third quarter ended September 30, 2007.*** All amounts are expressed in U.S. dollars.

***The Company achieved record revenues for the three months ended September 30, 2007, realizing its 40th consecutive quarter of increased revenue growth versus the same quarter in the previous year. Revenues in the quarter increased by 41.4% to $205,666,000 as compared to $145,463,000 in the third quarter of 2006, led by a 45.2% increase in revenues within the Company's vertically integrated natural and organic food operations. The Company's revenue growth in the quarter reflects an internal growth rate of 21.6% on a consolidated basis and includes internal growth of 24.8% within the SunOpta Food Group.***

***Operating income for the quarter increased 154.4% to $9,025,000 as compared to $3,547,000 in 2006, driven by increases in segment operating income within the SunOpta Food Group and led by the SunOpta Grains and Foods Group and the SunOpta Distribution Group. Net earnings for the quarter increased 234.4% to $5,096,000 or $0.08 per diluted common share as compared to $1,524,000 or $0.03 per diluted common share for the same period in the prior year.*** These results were realized despite significant costs and investment spending within the Company's healthy fruit snack business and SunOpta BioProcess Inc., and the unfavorable impact of the rising Canadian dollar on Canadian based overhead costs.

***For the nine months ended September 30, 2007, the Company has achieved record revenues of $597,083,000 versus $434,520,000 in the same period of the prior year, an increase of 37.4%. Net earnings for the same period increased 76.8% to $15,696,000 or $0.25 per diluted common share as compared to $8,879,000 or $0.15 per diluted common share for the same period in 2006.***

*In the third quarter, the SunOpta Food Group reported increased revenues of $184,402,000 as compared to $127,003,000 in the third quarter of 2006, a 45.2% increase. Segment operating income increased to $8,480,000 versus $2,625,000 in 2006, an increase of 223.1%. This increase was realized despite additional corporate cost allocations of $1,657,000 versus the prior year.* The increase in segment operating income reflects improved results in the SunOpta Grains and Foods Group due to strong sales of non-GMO and organic grains and grain based ingredients, increased sales of aseptic and extended shelf life packaged beverage products and is reflective of the significant turnaround that has been realized within the Group's sunflower operations. The SunOpta Ingredients Group realized improved segment operating income due to higher volumes of oat and soy fiber and dairy based ingredients plus the beneficial impact of process improvement and cost rationalization initiatives within the Group's processing operations. The SunOpta Distribution Group realized strong improvement in segment operating income due to continued growth in the natural and organic grocery sector combined with ongoing margin improvement initiatives. These increases were partially offset by a decline in Fruit Group segment operating income as the Group continued to invest in operational improvements and expanded capacity within its healthy fruit snack operations. These investments will significantly increase capacity and address ongoing processing inefficiencies which have significantly impacted this business during 2007. *The healthy fruit snack business expects to realize improved results in the fourth quarter and a $2 million profit turnaround in 2008.*

*Opta Minerals' revenue increased to $20,485,000, due primarily to the acquisitions of Bimac Corporation in late 2006 and Newco a.s. during the quarter, offset by cyclical weakness in the foundry and steel industries. Segment operating income for the quarter increased by 10.7% to $2,236,000 from $2,020,000, due primarily to the acquisitions completed, offset by product mix and reduced sales of higher margin desulphurization products which are sold into the steel industry.* The Group continues to pursue strategic transactions and new product development to complement its existing product portfolio.

*SunOpta BioProcess Inc. recorded revenues of $779,000 in the quarter ended September 30, 2007 as compared to $1,573,000 in the prior year which included the sale of a pilot plant to a Chinese customer.* The Group continues to work toward completing current proprietary pre-treatment and fiber preparation equipment projects and is pursuing a number of cellulosic ethanol projects in both North America and around the world. With the

increasing interest in cellulosic ethanol due to raw material supply and cost issues in traditional ethanol markets, the Company has increased development and commercial activities and continues to responsibly invest in personnel and technological advancements deemed essential to execute on the potential of this growing market.

***The Company remains well positioned for future growth with working capital of $154,778,000 and total assets of $571,603,000. Capital additions in the quarter were $9,562,000 including approximately $1,500,000 for the acquisition of a soymilk manufacturing facility during the quarter, as compared to $2,143,000 for the same period in the prior year. The long-term debt to equity ratio at September 30, 2007 was 0.35:1:00, providing the Company financial resources to invest in internal growth, capital projects and execute on its acquisition program. Book equity per outstanding common share has grown to $4.11 from $3.94 at June 30, 2007.***

Steve Bromley, President and Chief Executive Officer of SunOpta commented, "We are quite pleased with our third quarter results, driven by solid internal growth of over 20% in the quarter. ***We continue to see strong growth prospects within each of our operating segments and are positioning the Company to realize these opportunities. Last year we stated that our sunflower business would see a turnaround of $4,000,000 year over year and we are pleased to report that these results have actually increased by over $5,000,000 after just nine months.*** We expect that the significant investments being made within our healthy fruit snack business and SunOpta BioProcess Inc., which have impacted the third quarter operating results, are a wise investment for the long-term and will provide excellent returns. ***Based on our results to date, we are pleased to reconfirm our revenue guidance of $775,000,000 to $800,000,000 for fiscal 2007 as well as confirm our net earnings guidance in the range of $0.35 to $0.40 per share, albeit at the lower end of the range, after absorbing the previously mentioned investment spending in our fruit snack operations and SunOpta BioProcess Inc."*** [Emphasis added. Internal references omitted.]

22.    On November 8, 2007, SunOpta filed its Quarterly Report with the SEC on Form 10-Q. The Company's 10-Q was signed by Defendants Bromley and Dietrich and reaffirmed the Company's financial results previously announced on November 6, 2007. The Company's 10-Q also contained certifications, substantially similar to the certifications contained in ¶ 21, *supra*.

Additionally, the Company, in relevant part, stated:

**Basis of presentation**

The interim condensed consolidated financial statements of SunOpta Inc. (the Company) have been prepared in accordance with the instructions to Form 10-Q and Rule 10-01 of Regulation S-X and in accordance with accounting principles generally accepted in the United States. Accordingly, these financial statements do not include all of the disclosures required by generally accepted accounting principles for annual financial statements. In the opinion of management, all adjustments considered necessary for fair presentation have been included and all such adjustments are of a normal, recurring nature. Operating results for the nine months ended September 30, 2007 are not necessarily indicative of the results that may be expected for the full year ending December 31, 2007. For further information, see the Company's consolidated financial statements and notes thereto, included in the Annual Report on Form 10K for the year ended December 31, 2006.

\*　　　\*　　　\*

**Item 4.    Controls and Procedures**

Under the supervision and with the participation of management, the Chief Executive Officer and Chief Financial Officer of the Company have evaluated the effectiveness of the design and operation of the Company's disclosure controls and procedures as of September 30, 2007, and, based on their evaluation, the Chief Executive Officer and Chief Financial Officer have concluded that these controls and procedures are effective. Disclosure controls and procedures are designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported, within the time periods specified in the Securities and Exchange Commission's rules and forms. Disclosure controls and procedures are also designed to ensure that information is accumulated and communicated to management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure.

**Internal Control over Financial Reporting**

There has been no change in the Company's internal control over financial reporting that occurred during the Company's quarter

ended September 30, 2007 that has materially affected, or is reasonably likely to materially affect, the Company's internal control over financial reporting.

23.    On December 3, 2007, the Company issued a press release entitled "SunOpta

Announces Secondary Share Offering."  Therein, the Company, in relevant part, stated:

> SunOpta Inc. (SunOpta) (Nasdaq:STKL) (TSX:SOY) ***announced today a public offering by Stephen R. Bronfman, SRB Belvedere Trust and The Charles R. Bronfman Trust (collectively, the "Selling Shareholders") of all of their 5,080,532 common shares of SunOpta.*** The Company confirmed that it will not receive any proceeds from the offering and that it has entered into an underwriting agreement at the request of the Selling Shareholders. The sole underwriter for this offering is BMO Capital Markets Corp.
>
> SunOpta has filed a registration statement with the United States Securities and Exchange Commission (SEC) in connection with the offering of the shares. The registration statement automatically became effective upon filing because the company is a well-known seasoned issuer. The shares will be offered for sale by the underwriter to the public only in the United States pursuant to the prospectus.
>
> ***Steve Bromley, President and CEO of SunOpta, commented, "The Selling Shareholders have been valued shareholders and partners over the past six years, and I'd like to personally thank them for their significant support of SunOpta over the years. Their participation came at a very important time in our development as a world class leader in natural, organic and specialty foods. Today, SunOpta is looking at a very bright future, and I want to take this opportunity to welcome the new shareholders this offering brings to SunOpta."*** [Emphasis added.]

24.    On December 3, 2007, SunOpta filed a Registration Statement with the SEC on

Form S-3ASR.  The Registration Statement, in relevant part, stated:

### <u>SELLING SECURITY HOLDERS</u>

> We will not receive any of the proceeds from the sale of the Shares by the selling security holders.  (See page 16). The following table sets forth information with respect to Shares owned by such selling security holders.  The information regarding Common Shares to be

owned after the offering assumes the sale of all Shares offered by the selling security holders by this Prospectus.

| Name of Selling Security Holder | Number of Shares Held Prior to Offering | Number of Shares being Offered | Number of Shares to be Owned After Offering |
|---|---|---|---|
| Stephen R. Bronfman | 4,550,000 | 4,550,000 | 0 |
| Charles R. Bronfman | 109,818 | 109,818 | 0 |
| SRB Belvedere Trust | 420,714 | 420,714 | 0 |
| Total | 5,080,532 | 5,080,532 | 0 |

*            *            *

**CONSENT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM**

We hereby consent to the incorporation by reference in the Registration Statement on Form S-3 of our report dated February 22, 2007 relating to the financial statements, management's assessment of the effectiveness of internal control over financial reporting and the effectiveness of internal control over financial reporting which appears in SunOpta Inc.'s Annual Report on Form 10-K for the year ended December 31, 2006. We also consent to the reference to us under the heading "Experts" in such Registration Statement.

/s/ PricewaterhouseCoopers LLP

Chartered Accountants, Licensed Public Accountants

Mississauga, Ontario

December 3, 2007

25.    On December 20, 2007, the Company issued a press release entitled "SunOpta

Announces Director Resignation."  Therein, the Company, in relevant part, stated:

> SunOpta Inc. (Nasdaq:STKL) (TSX:SOY) today announced that **Stephen Bronfman, Chairman and President of Claridge Inc., a member of the Company's Board of Directors, submitted his resignation effective today. Mr. Bronfman's resignation was expected given the recent liquidation of his holdings in the Company.**

Jeremy Kendall, Chairman of SunOpta commented, "On behalf of the Board, the management and employees of the Company, we want to thank Stephen for his contribution over the years in the development of SunOpta and wish him the very best in his future endeavours." [Emphasis added.]

26.     The statements contained in ¶¶ 18-24 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that defendants artificially inflated the Company's financial results and failed to properly account for results of operations, which resulted in an overstatement of the Company's profitability; (2) that the Company's financial statements were not prepared in accordance with GAAP; (3) that the Company lacked adequate internal and financial controls; (4) that, as a result of the foregoing, the Company's financial statements were materially false and misleading at all relevant times; and (5) that, as a result of the foregoing, the Company's statements about its financial well-being and future business prospects were lacking in any reasonable basis when made.

## The Truth Begins to Emerge

27.     On January 24, 2008, the Company shocked investors when it issued a press release entitled "SunOpta Provides Update On 2007 Earnings Results."  Therein, the Company, in relevant part, stated:

SunOpta Inc. (Nasdaq:STKL) (TSX:SOY) today provided an indication of expected financial results for 2007.

For fiscal 2007, the Company is expected to realize revenues of slightly over $800 million, exceeding previously provided revenue guidance of $775 to $800 million, an increase of approximately 34% versus 2006. These revenues are reflective of the continued strong demand in the Company's core natural and organic foods business.

***Earnings for the year are expected to be in the range of $0.12 to $0.14 per diluted common share and have been impacted by significant issues within the SunOpta Fruit and SunOpta BioProcess Groups which have led to significant write downs and provisions in the range of $12 to $14 million pre-tax. The***

*Company is currently analyzing the impact of the adjustments related to the SunOpta Fruit Group berry operations, including the potential impact on previously issued fiscal 2007 financial statements which will likely result in the restatement of previous quarters.*

*The Company has determined that inventories within the SunOpta Fruit Group's berry operations require write-down to net realizable value and preliminary estimates indicate that an adjustment in the range of $9 to $11 million for this issue and related items is necessary.* Upon becoming aware of this issue, the Company has initiated a number of immediate and specific actions including engagement of an independent third party by the Company's audit committee to assess internal controls and processes, and implementation of a series of specific pricing and cost related actions to address potential causes of this issue. The Company's testing and analysis is ongoing and there can be no assurance that further adjustments will not be required.

*Included in the updated earnings estimate for the year is a provision of approximately $3 million pre-tax, related to difficulties in collecting for services and equipment provided to a customer under the terms of an existing equipment supply contract within the SunOpta BioProcess Group.* The Company also has knowledge that the customer's US affiliate is in violation of a Technical Development Agreement which delineates the intellectual property of each of the parties. As a result of failed discussions to resolve these issues, the Company has taken legal action to protect its intellectual property and recover costs, and thus feels it is necessary to reserve for uncollected amounts.

The balance of the Company's core food group operations performed extremely well throughout the year. The SunOpta Grains and Foods Group, SunOpta Ingredients Group, SunOpta Distribution Group and global sourcing operations within the SunOpta Fruit Group all reported strong results, well ahead of the prior year. Opta Minerals Inc. continues to perform well but has been somewhat impacted by cyclical weak economic conditions which are impacting the steel and foundry industries. Even with the tough economic conditions, the business is expected to realize earnings in the same range as the prior year. SunOpta BioProcess continued to invest in expansion of its operations throughout the year and in doing so is now well positioned for the future.

*Given the issues within the SunOpta Fruit Group's berry operations, the Company has decided to fully assess the short and long term impact of the root causes behind the issues identified*

*before providing 2008 revenue and earnings guidance. This analysis is currently ongoing.* The Company remains very confident in its strategic positioning and the outlook for the business, but believes it is most prudent to complete this analysis in order to ensure that the guidance provided is as accurate as possible. [Emphasis added.]

28.    On January 25, 2008, the *Associated Press* published an article entitled, "SunOpta

Shares Drop on Guidance Cut."  Therein, the article, in relevant part, stated:

**SunOpta Shares Plummet After Company Slashes 2007 Guidance, Blaming Write-Downs**

NEW YORK (AP) -- Shares of Toronto-based SunOpta Inc. hit a 52-week low Friday after the company dramatically cut its 2007 profit prediction and said it likely will have to restate results for prior quarters.

*In heavy morning trading, SunOpta's U.S. shares plummeted $3.72, or 39 percent, to $5.84, after dropping as low as $5.71 earlier in the day and easily passing its previous low of $8.47.*

*SunOpta, which processes and produces organic foods, said it expects to post a profit of 12 cents to 14 cents per share for the year, citing issues within its fruit and BioProcess groups that led to pretax write-downs and provisions of $12 million to $14 million.*

*The company had previously projected a profit of 35 cents to 40 cents per share for the year. Analysts polled by Thomson Financial expect a profit of 34 cents per share.*

SunOpta said it's analyzing the impact of the adjustments related to its fruit group berry operations, including the potential impact on previously issued fiscal 2007 financial results, which will likely result in the restatement of previous quarters.

The company also boosted its revenue prediction for the year to slightly over $800 million, up from its previous guidance of $775 million to $800 million, citing continued strong demand in its core natural and organic foods business.

Analysts, on average, expect revenue of $795.8 million for the year. [Emphasis added.]

29.    Based on the news from the Company and the *Associated Press* article, the

Company's shares fell $3.51 per share, or 36.72 percent, to close on January 25, 2008 at $6.05 per share, on unusually heavy trading volume.

**SUNOPTA'S VIOLATION OF GAAP RULES
IN ITS FINANCIAL STATEMENTS
<u>FILED WITH THE SEC</u>**

30.    These financial statements and the statements about the Company's financial results were false and misleading, as such financial information was not prepared in conformity with GAAP, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting for, and disclosure about its revenues, in violation of GAAP rules.

31.    GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. § 210.4 01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

32.    The fact that SunOpta will restate its financial statements, and disclosed that these financial statements should not be relied upon is an admission that they were false and misleading when originally issued (APB No.20, ¶¶7-13; SFAS No. 154, ¶25).

33.    Given these accounting irregularities, the Company announced financial results that were in violation of GAAP and the following principles:

(a)    The principle that "interim financial reporting should be based upon the

same accounting principles and practices used to prepare annual financial statements" was violated (APB No. 28, ¶10);

(b)     The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit, and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34);

(c)     The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events, and circumstances that change resources and claims to those resources" was violated (FASB Statement of Concepts No. 1, ¶40);

(d)     The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated (FASB Statement of Concepts No. 1, ¶42);

(e)     The principle that "financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it" was violated (FASB Statement of Concepts No. 1, ¶50);

(f)     The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated (FASB Statement of Concepts No. 2, ¶¶ 58-59);

(g)     The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents

underlying events and conditions" was violated (FASB Statement of Concepts No. 2, ¶79); and

(h)     The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated (FASB Statement of Concepts No. 2, ¶95).

34.     The adverse information concealed by defendants during the Class Period and detailed above was in violation of Item 303 of Regulation S-K under the federal securities law (17 C.F.R. §229.303).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased SunOpta's securities between August 8, 2007 and January 25, 2008, inclusive (the "Class Period") and who were damaged thereby.  Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SunOpta's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by SunOpta or, its transfer agent and may be notified

22

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SunOpta; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

40.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

41.    The market for SunOpta's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and misleading statements, and failures to disclose, SunOpta's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired SunOpta's securities relying upon the integrity of the market price of SunOpta's securities and market information relating to SunOpta, and have been damaged thereby.

42.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of SunOpta's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading.  Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

43.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about SunOpta's financial well-being and prospects. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of SunOpta and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the

damages complained of herein.

## LOSS CAUSATION

44.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

45.    During the Class Period, Plaintiff and the Class purchased SunOpta's securities at artificially inflated prices and were damaged thereby.   The price of SunOpta's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

46.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.   As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding SunOpta, their control over, and/or receipt and/or modification of SunOpta's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunOpta, participated in the fraudulent scheme alleged herein.

47.    Throughout the Class Period, the defendants took advantage of the artificially inflated price of the Company's securities in completing numerous financing activities.   For example, on December 3, 2007, the Company conducted a large insider offering, allowing

Defendant Bronfman to dispose of over 4.5 million shares (100% of the Company shares he owned or controlled).   As a result, Defendant Bronfman experienced a personal windfall of over $60 million.  Immediately after this enormous financial gain, Defendant Bronfman resigned from SunOpta's Board of Directors.

48.    Additionally, during the Class Period, and with the Company's securities trading at artificially inflated prices, Company insiders sold 4,636,250 shares of the Company's stock for gross proceeds of $61,177,377, including over $60,701,300 in gross proceeds received by the Individual Defendants.  This trading by Company insiders is evidenced by the following chart:

| Date of Trade | Inside Trader | Number of Shares | Price per Share | Gross Proceeds |
|---|---|---|---|---|
| December 14, 2007 | BROMLEY, STEVEN R. | 17,000 | $12.90 - $13 | $220,000 |
| December 14, 2007 | BRONFMAN, STEPHEN R. | 29,000 | $13.07 | $379,030 |
| December 14, 2007 | CHHIBA, BENJAMIN | 2,000 | $13 | $26,000 |
| December 13, 2007 | BROMLEY, STEVEN R. | 3,250 | $13.03 | $42,347 |
| December 7, 2007 | BRONFMAN, STEPHEN R. | 4,550,000 | $13.20 | $60,060,000 |
| August 27, 2007 | ROUTH, ALLAN GLEN | 30,000 | $12.67 - $12.67 | $380,000 |
| August 20, 2007 | ING, CYRIL | 5,000 | $14 - $14 | $70,000 |
|  | TOTAL: | 4,636,250 |  | $61,177,377 |

**Applicability of Presumption of Reliance:**
**Fraud On The Market Doctrine**

49.    At all relevant times, the market for SunOpta's securities was an efficient market for the following reasons, among others:

(a)    SunOpta's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, SunOpta filed periodic public reports with the SEC and the NASDAQ;

(c)    SunOpta regularly communicated with public investors <u>via</u> established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)    SunOpta was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

50.    As a result of the foregoing, the market for SunOpta's securities promptly digested current information regarding SunOpta from all publicly-available sources and reflected such information in the price of SunOpta's securities. Under these circumstances, all purchasers of SunOpta's securities during the Class Period suffered similar injury through their purchase of SunOpta's securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

51.    The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of SunOpta who knew that those statements were false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SunOpta's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SunOpta's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about SunOpta's financial well-being and prospects, as specified herein.

56.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunOpta's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about SunOpta and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of SunOpta's securities during the Class Period.

57.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their

responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

58.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunOpta's financial well-being prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's financial well-being and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of SunOpta's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of SunOpta's securities were artificially inflated, and relying directly or indirectly on the false and

misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired SunOpta's securities during the Class Period at artificially high prices and were damaged thereby.

60.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that SunOpta was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SunOpta securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

### SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of SunOpta within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level

positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.    As set forth above, SunOpta and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a trial by jury.

Dated: February 1, 2008

Respectfully submitted,

BRODSKY & SMITH, LLC

<u>*By:Evan J. Smith, Esquire*</u>
Evan J. Smith, Esquire
240 Mineola Boulevard
Mineola, NY 11501
516-741-4977
516-741-0626 (facsimile)

**SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP**
Richard A. Maniskas
D. Seamus Kaskela
David M. Promisloff
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)

**Attorneys for Plaintiff**